**Ronald Edward GILLETTE, Petitioner–Appellant,**

**v.**

**Robert J. TANSY and Attorney General of the State of New Mexico, Respondents–Appellees.**

No. 92–2186.

United States Court of Appeals, Tenth Circuit.

Feb. 14, 1994.

Rehearing Denied March 7, 1994.

Stephen P. McCue, Assistant Federal Public Defender, Albuquerque, New Mexico, for Petitioner–Appellant.

Tom Udall, Attorney General, Gail Mac-Questen, Assistant Attorney General, Santa Fe, New Mexico, for Respondents–Appellees.

Before SEYMOUR and EBEL, Circuit Judges, and THOMPSON,* District Judge.

EBEL, Circuit Judge.

Petitioner was convicted of sixteen counts of criminal sexual penetration (CSP) in the second degree, five counts of attempted murder, and one count each of arson, burglary, and contributing to the delinquency of a minor. The facts surrounding these convictions are presented in *State v. Gillette,* 102 N.M. 695, 698–99, 699 P.2d 626, 629–30 (Ct.App. 1985). Briefly, the CSP and contributing to the delinquency of a minor convictions involved a young male in a family with whom defendant lived. The arson and burglary convictions related to the family's home after defendant moved out. Two of the attempted murder convictions arose out of the arson and were attempts against the CSP victim's mother and brother. The other three attempted murder convictions involved the attempted poisoning of the mother and her two coworkers.

Petitioner is currently serving a twenty-seven year sentence in the New Mexico penitentiary. He filed a petition for a writ of habeas corpus alleging that his trial counsel provided ineffective assistance. Following the evidentiary hearing and briefing on the ineffective counsel claims, petitioner filed a motion to amend his petition to allege an insufficiency of the evidence claim. He later filed a motion to supplement the record with a letter written by the CSP victim.

The magistrate judge denied both of petitioner's motions. Adopting the magistrate judge's proposed findings and recommendations, the district court determined that petitioner's counsel was effective and dismissed the petition. Petitioner appeals the denial of his two motions and dismissal of his petition.[1] Petitioner's appointed counsel filed briefs on his behalf. We granted petitioner leave to file a separate pro se brief to raise issues that petitioner's counsel stated he could not raise. *Cf. Anders v. California,* 386 U.S. 738,

744–45, 87 S.Ct. 1396, 1400–01, 18 L.Ed.2d 493 (1967). We have considered the arguments raised by both petitioner and his counsel.

We first address the merits of petitioner's ineffective counsel claims. Petitioner contends his counsel was ineffective in the following four ways:

(a) Failure to investigate, object to and/or present evidence concerning the purchase and supposed use of Coleman fuel by the defendant to commit arson and attempted murder;

(b) Failure to investigate, object to and/or present evidence concerning the supposed use of sodium pentobarbital by the defendant to commit attempted murder;

(c) Failure to object to the use of defective jury instructions for the sixteen (16) counts of criminal sexual penetration;

(d) Failure to investigate, object to and/or present evidence concerning the lack of proof of the essential element of coercion in each of sixteen (16) sexual penetration counts.

Appellant's Br. at 17–18. The district court determined that these alleged errors were best characterized as trial tactics and strategy and that they did not constitute ineffective assistance.

To prove his ineffective assistance of counsel claim, petitioner has the burden of showing both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Osborn v. Shillinger,* 997 F.2d 1324, 1328 (10th Cir. 1993). The first prong of this test can be established by showing that the attorney's advice was not within the wide range of competence demanded of attorneys in criminal cases. *Laycock v. New Mexico,* 880 F.2d 1184, 1187 (10th Cir.1989) (citing *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)). "The proper stan-

---

* Honorable Ralph G. Thompson, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that

oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

dard for measuring attorney performance is reasonably effective assistance." *Id.* Moreover, a court's review of that performance must be highly deferential:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citations and quotation omitted).

We note at the outset that petitioner's counsel was an experienced former prosecutor and defense attorney who had handled numerous felony jury trials including murder, sex offender, and arson cases. *See United States v. Miller,* 907 F.2d 994, 1001 (10th Cir.1990) (noting relevance of counsel's experience). We agree with the district court that counsel was effective and that the challenged action, discussed below, may be considered sound trial strategy.

(a) *Coleman fuel.*

■ The prosecution presented evidence that, just prior to the arson, petitioner had purchased Coleman fuel from a convenience store near the arsoned residence and that Coleman fuel had been used as the accelerant for the fire. A convenience store employee testified that he sold petitioner the fuel. He recalled the sale because it was very rare that the store sold Coleman fuel,

and he recognized petitioner from his former duties as an armored car courier serving the store. Petitioner contends that his counsel should have subpoenaed the store's cash register receipts and inventory records. He contends these records would have shown that the store did not sell any fuel around the time in question, and this information could have been used to impeach the employee.

Petitioner's counsel interviewed the employee prior to trial and knew the employee would identify petitioner. On cross-examination at trial, counsel tried to impeach the employee with questions concerning the animosity between the employee and petitioner due to petitioner's allegations that the employee had been stealing from the store. Notwithstanding any doubt as to whether the store records were available and would contain the information petitioner contends, we do not view counsel's choice of means to impeach the employee as ineffective.

An expert witness for the prosecution testified that she identified Coleman fuel on a towel and in a Coleman fuel can found at the arson scene. Petitioner claims that his research from prison showed that the exact formula of Coleman fuel was a trade secret and that it would be very unlikely that the expert could identify the samples as Coleman fuel as opposed to other similar fuels. He claims that counsel was ineffective for failing to investigate this fact himself and challenge the expert's testimony. We disagree. Counsel did cross-examine the expert on how she knew the fuel was Coleman fuel rather than some other type. The expert explained that she maintained known samples of a variety of fuels and that the gas chromatograph tests she ran compared the evidence with known samples of Coleman fuel. Considering the type of tests the expert performed, the precise formula for Coleman fuel was irrelevant. Thus, this topic would not have been a fruitful area to explore on cross-examination of the expert.

(b) *Pentobarbital.*

Petitioner was convicted of attempted murder for placing pentobarbital in a can of Dr. Pepper that was delivered to the hospital where the CSP victim's mother worked and

was drunk by the mother and two coworkers. Petitioner worked at an animal shelter in which pentobarbital was used. Petitioner claims that his counsel failed to present evidence that pentobarbital was widely available in a variety of forms, that it was available at the hospital where the mother worked, and that there were other individuals who had access to the drug and a motive to kill the mother. Counsel's failure to present this evidence, he contends, left the jury with the impression that the only source of pentobarbital was the shelter where petitioner worked. He also claims that counsel should have impeached the testimony of a witness who testified that pentobarbital was used in lethal injections for capital punishment, because his research showed this not to be true.

Counsel unsuccessfully moved to preclude testimony by the state expert who identified the pentobarbital. The basis for this motion was that the testing consumed all of the Dr. Pepper and pentobarbital. There was therefore no drug available for the defense to test and show that the form of pentobarbital available to petitioner was different from that in the Dr. Pepper can. Counsel elicited testimony from the expert that there was a test that could have identified certain properties of the pentobarbital to which petitioner had access as opposed to other forms of the drug. The expert also testified that pentobarbital was available for a variety of purposes and that pharmacists had access to it. Counsel presented other evidence showing that the mother's ex-husband was a pharmacist and that she had separated from him shortly after learning he was gay. Thus, there was evidence that pentobarbital was widely available apart from petitioner's employment and, in particular, to someone who might have a motive to kill the mother. In addition, whether or not the drug is used in capital punishment is a collateral point at best, and impeaching the witness on this point would have had little, if any, effect. Counsel's performance in this area was thus not ineffective.

(c) *Jury instructions.*

Petitioner asserts that the jury instruction for the sixteen CSP counts was defective, apparently because it allowed a "homophobic theory" to be presented to the jury. Petitioner does not further explain this argument, and we cannot discern any "homophobic theory" in the instruction. Petitioner also apparently claims that his counsel should have requested an instruction outlining the defense's theory of the case, but he does not explain what this instruction would have said or further develop this argument. Petitioner has identified no ineffectiveness in counsel's handling of jury instructions.

(d) *Cross-examination of CSP victim.*

To be guilty of second-degree CSP, the perpetrator must have used his or her position of authority over the child to coerce the child to submit to the prohibited acts. N.M.Stat.Ann. § 30–9–11(B)(1). Petitioner contends that counsel's handling of one allegedly equivocal answer by the victim concerning whether he felt coerced to have sex with petitioner was inadequate and ineffective. Obviously, cross-examination of the young victim in this case, who was fifteen at the time of trial, was a very delicate and difficult matter. The question and answer at issue came at the end of counsel's recross-examination of the victim. Petitioner admits that the victim's earlier testimony as to whether he was coerced into having sex with petitioner was contradictory. We have reviewed counsel's cross-examination of the victim, as well as the prosecution's examination of him, and we conclude that counsel's performance in this area was effective.

 Petitioner contends that the district court erred by denying his motion to amend his complaint to assert claims of insufficient evidence. We review a trial court's decision on whether to allow amendment of pleadings for abuse of discretion. *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992). A court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). When a court refuses leave to amend, it must state its reasons. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir.1987). The magistrate judge's order stated that he

denied petitioner's motion because petitioner had already been allowed to amend his petition once and the evidentiary hearing had already been held.

Petitioner originally filed his petition pro se and included a variety of claims. After counsel was appointed to represent him, petitioner filed his first amended petition on November 21, 1989, and limited his claims to ineffective counsel. Petitioner contends that his insufficient evidence claims were not included in the amended petition because his counsel had determined he had not exhausted his state court remedies. The magistrate judge held the evidentiary hearing on October 30, 1990, and the parties filed briefs on petitioner's ineffective counsel claims between January 30 and April 3, 1991. Petitioner filed a state habeas petition raising his insufficient evidence claims on April 17, 1991. That petition was denied, and the New Mexico Supreme Court denied certiorari on May 15, 1991. On June 5, petitioner filed his motion to amend his petition. The magistrate judge denied that motion on March 2, 1992. The magistrate judge's recommended findings and disposition of the petition were filed on July 23, 1992.[2] The district court adopted the recommendations and dismissed the petition on August 10, 1992.

Petitioner's insufficient evidence claims track the factual situations set forth in his ineffective counsel claims involving Coleman fuel, pentobarbital and coercion of the CSP victim. He contends that neither an additional hearing nor additional briefing is necessary. Respondents do not assert that they would be prejudiced in any way by allowing petitioner to amend his petition. They do request that they be allowed to brief the insufficient evidence claims if the case is remanded.

Though petitioner does not explain his delay in seeking to exhaust his state remedies, we do not believe the magistrate judge's stated reasons for denying the motion to amend are compelling. Counsel had been appointed to winnow down petitioner's original claims to those with merit, which he did in the first amended petition. Counsel waited until petitioner sought state court remedies before moving to amend the petition. At the pace this case was proceeding, there is no indication that allowing amendment would have caused undue delay. Petitioner does not seek a second evidentiary hearing. Moreover, there is no evidence of bad faith by petitioner or of prejudice to respondents. *See Triplett v. Leflore County,* 712 F.2d 444, 446 (10th Cir.1983). We therefore conclude that the district court abused its discretion in denying petitioner's motion to amend. On remand, the court should allow petitioner to amend his petition and the parties to brief the added claim.[3]

■ Finally, petitioner contends that the district court abused its discretion by denying his August 12, 1991, motion to supplement the record with a letter from the CSP victim. The letter is dated May 9, 1986, and petitioner does not explain why it was not introduced at the October 1990 evidentiary hearing. The district court did not abuse its discretion in denying this motion.[4]

The judgment of the United States District Court for the District of New Mexico is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this order and judgment.

---

**2.** Part of the delay was apparently caused by the death of the original magistrate judge on March 25, 1992.

**3.** Respondents argue that petitioner procedurally defaulted his insufficient evidence claims. The district court addressed neither this argument nor the issue of whether petitioner exhausted his state law remedies. We express no opinion on whether petitioner did in fact exhaust his state court remedies or procedurally default his insufficient evidence claims.

**4.** In petitioner's separate pro se brief, he urges us to review all trial exhibits and his motions to amend his petition and expand the record. On remand, the district court will review the exhibits to the extent it feels is appropriate. We have addressed his two motions. Petitioner also provides information concerning the CSP victim's mother's knowledge of her son's sexual activities and her remarriage. This information is irrelevant to this appeal.