**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD LYNN DOPP,

Plaintiff - Appellant,

v.

BEN LORING, District Attorney;
TOM MAY; DAVID ANDERSON;
CHRIS MORRIS; ROB GARNER;
EDWARD WYANT; OTTAWA
COUNTY BOARD OF COUNTY
COMMISSIONERS,

Defendants - Appellees.

No. 05-5057

N.D. Okla.

(D.C. No. 02-CV-659-E)

## ORDER AND JUDGMENT[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

Richard Lynn Dopp, an Oklahoma state prisoner appearing *pro se* and *in forma pauperis*, appeals from the district court's dismissal of his *pro se* complaint brought pursuant to 42 U.S.C. § 1983.[1] Exercising jurisdiction under 28 U.S.C.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We construe *pro se* pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

§ 1291, we affirm.

## I. Background

On May 8, 1996, a state search warrant was executed upon Dopp's property in Wyandotte, Oklahoma. In addition to discovering a large amount of drugs and drug paraphernalia, officers seized a number of personal property items believed to be the proceeds of Dopp's illegal drug enterprise. Dopp was arrested and eventually convicted in Oklahoma state court of various drug and firearm charges. In May 1998, he was sentenced to, *inter alia*, life imprisonment without the possibility of parole.

On August 22, 2002, Dopp filed a *pro se* § 1983 complaint against Ben Loring, Tom May, David Anderson, Chris Morris, Edward Wyant (State Defendants) and Bob Garner, alleging they had disposed of certain personal property seized from his residence without providing him notice or a pre-deprivation hearing in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Oklahoma law.[2] Specifically, Dopp asserted they

---

[2] Loring and Wyant were Ottawa County District Attorney and Assistant District Attorney, respectively, at the time the search warrant was executed on Dopp's residence. May and Anderson were Loring's and Wyant's successors, respectively. Morris is an investigator for the Ottawa County District Attorney's Office. Garner owns and operates Bob Garner Garage and Wrecking Service in Picher, Oklahoma, where many of the vehicles seized from Dopp's residence were towed. Dopp also named the Ottawa County Board of Commissioners. He alleged, *inter alia*, the Board violated his Eighth Amendment rights. The district court dismissed the Eighth Amendment claim without prejudice. Later, Dopp successfully moved to dismiss the Board without prejudice.

had wrongfully disposed of the following personal property, none of which was used as evidence in his criminal trial: (1) 1965 Ford pickup truck, VIN No. 10DK641079, (2) $33,725 cash, (3) $139 cash, (4) 400 Channel Realistic scanner, (5) miscellaneous bullets, (6) miscellaneous papers, (7) U.S. passport and (8) thirteen photographs.[3]

Thereafter, Defendant Garner filed a *pro se* answer denying the allegations in the complaint. The State Defendants filed a motion to dismiss. The district court denied the motion to dismiss, concluding Dopp's complaint had sufficiently stated a claim upon which relief may be granted. However, it determined an investigation and special report were necessary to develop a record sufficient to ascertain whether there were any factual and legal bases for Dopp's claims. Consequently, the court directed the State Defendants to investigate the complaint and prepare a *Martinez*[4] report within sixty days. Thereafter, the State Defendants filed a *Martinez* report with supporting exhibits and simultaneously filed an answer and a new motion to dismiss. Almost a year later, the district court advised the parties by order that the motion to dismiss would be treated as a

---

[3] Dopp also alleged the State Defendants wrongfully disposed of two Remington Model 1100 shotguns. The State Defendants asserted these shotguns were released to Dopp's attorney of record. The district court found the State Defendants were legally entitled to release the guns to Dopp's attorney and did not violate his constitutional rights by doing so. Dopp does not challenge this ruling on appeal.

[4] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (en banc).

motion for summary judgment.

On October 1, 2004, Dopp moved to amend his complaint and attached a proposed amended complaint. The court denied Dopp's motion and again reminded the parties the pending motion to dismiss was being treated as a motion for summary judgment. It gave the parties an additional twenty days to file summary judgment materials and/or supplemental responses. On March 11, 2005, the court dismissed without prejudice Dopp's claims against Defendant Garner for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B) and granted the State Defendants' motion for summary judgment. Dopp filed a motion to alter or amend the March 11, 2005 order and judgment, which was denied. This timely appeal followed.[5]

## II. Discussion

Dopp challenges the court's dismissal of his claims against Defendant Garner under 28 U.S.C. § 1915(e)(2)(B) and its grant of summary judgment to the State Defendants. He further alleges the court erred in denying him leave to amend his complaint.

A. *Defendant Garner*

After executing the search warrant on Dopp's property, the State Defendants had a number of vehicles towed from Dopp's property to Bob Garner

---

[5] The State Defendants' brief does not contain any record citations and their arguments are essentially limited to asserting the district court was correct. Such a conclusory brief is not helpful to our review of the case.

Garage and Wrecker Service. Among those vehicles was a 1965 Ford pickup truck, VIN No. 10DK641079, which is the subject of this lawsuit. On May 24, 1996, Defendant Loring filed an "Authorization to Release Property" in Dopp's state criminal action which authorized the release of certain property, including the 1965 Ford pickup truck, to Dopp. Over the next couple of days, Dopp paid Defendant Garner the towing and storage fees for six vehicles seized from his residence and obtained their release.[6] However, Dopp did not secure the release of the 1965 Ford truck, stating he ran out of money to pay its towing and storage fees.[7] He also learned he was not legally required to pay the towing and storage fees. Approximately two years later (May 1998), Garner sold the 1965 Ford truck for storage fees owed against it. On April 11, 2001, Dopp wrote Garner a letter inquiring about the truck. Because Garner had sold it, he did not respond to the letter. On April 21, 2001, Dopp discovered Garner had sold the truck. In his complaint, Dopp alleged Garner, acting under color of state law, disposed of the truck without providing him notice or a pre-deprivation hearing in violation of due process.

---

[6] Dopp was out on bond from May 12, 1996, through May 1, 1998.

[7] According to Garner's affidavit, Dopp "retrieved all of the vehicles except [the 1965 Ford truck], stating he wasn't very concerned about it, even though he still had a large wad of cash after having paid for the release of the other vehicles. He did tell me he might be back later to get that vehicle. He never returned." (R. Vol. I, Doc. 41 at 90.) However, because Dopp's claim against Garner was dismissed on the pleadings, we treat Dopp's allegations as true. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

The district court dismissed without prejudice Dopp's claim against Garner for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). Specifically, it found Garner's sale of the truck was not state action and therefore Dopp could not state a due process claim against Garner under § 1983.[8] Dopp argues the court erred in dismissing his claim against Garner. Relying on *Coleman v. Turpen*, he contends the truck's sale constituted state action because Garner towed and stored the truck at the direction of state officers and sold the truck for storage fees owed against it pursuant to Oklahoma statute. 697 F.2d 1341 (10th Cir. 1983).

We review *de novo* a district court's dismissal of a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). *Perkins*, 165 F.3d at 806.

> Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.

*Id.* (citation omitted).

Under § 1983, liability attaches only to conduct occurring under color of state law; conduct constituting state action under the Fourteenth Amendment satisfies this requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18

---

[8] The district court also concluded Dopp's claim against Garner was barred by the two-year statute of limitations. Given that the truck's sale did not constitute state action, we need not address the timeliness of Dopp's complaint.

(1982).  Private conduct constitutes state action if it is "fairly attributable to the State."  *Id.* at 937; *see Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000).  This requirement is satisfied if two conditions are met:  (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) the private party charged with the deprivation "must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937.

It is undisputed Garner is not a state officer or employee and therefore the district court properly considered him a private individual.  Applying *Lugar*, we conclude Garner's sale of the truck was not state action.  Garner presumably sold the truck pursuant to OKLA. STAT. tit. 12A, § 7-210 (allowing a warehouseman's lien for storage fees to be enforced by public or private sale of the goods after notice to all persons known to claim an interest in the goods).  Therefore, Garner's sale of the truck satisfies the first prong of the *Lugar* test.  *See Coleman*, 697 F.2d at 1345 (concluding first part of *Lugar* test was met where defendant wrecker service sold property pursuant to OKLA. STAT. tit. 12A, § 7-210).  However, the truck's sale fails to satisfy the second part of *Lugar*.  Although Garner was acting for the State when he towed the truck, there is absolutely no

evidence the State Defendants or any other state official assisted Garner in selling the truck or otherwise encouraged or authorized him to do so. Indeed, at the time Garner sold the truck, the State Defendants had released it to Dopp. Thus, Garner was holding the truck for Dopp, not the State, at the time of the sale. Consequently, the sale of the truck is not "chargeable to the State."

*Coleman* is clearly distinguishable. There, the police seized Coleman's camper and hired Kiefer to tow and store it. Later, Kiefer sold the camper to satisfy its storage fees without providing notice to Coleman. Coleman sued Kiefer under § 1983 alleging he deprived him of his property without due process. The district court dismissed the claim concluding Kiefer was not acting under color of law and therefore was not susceptible to suit under § 1983. We disagreed, finding Kiefer's sale of the camper satisfied both prongs of *Lugar*. With regard to the second prong, we stated:

> Kiefer jointly participated in seizing the [camper] by towing it away. *Since the State has asserted a right to maintain possession of the camper, Kiefer held the truck for the State, not for Mr. Coleman.* In allowing Kiefer to sell the camper, the State thus deprived Mr. Coleman of his property in joint participation with Kiefer. We hold that Kiefer's sale of the camper was state action under the fourteenth amendment and was therefore under color of state law for purposes of section 1983.

*Id.* (emphasis added). Unlike in *Coleman*, Garner was holding the truck for Dopp, not the State, at the time of its sale.

This case is more akin to *Weinrauch v. Park City*, 751 F.2d 357 (10th Cir. 1984). There, a police officer had Speers tow Weinrauch's vehicle to an impound

lot. Later, the police officer informed Weinrauch she could recover her car by paying Speers a towing fee. When Weinrauch arrived at the impound lot, no attendant was present. Therefore, she took her vehicle without paying the fee. Shortly thereafter, the vehicle was reported stolen. Two police officers responded to the call and began pursuing Weinrauch's vehicle. Speers also heard the police report. Concluding that the car was from the impound lot, Speers also began pursuing Weinrauch's vehicle. In the end, Weinrauch was stopped by the police and she paid Speers his fee. Weinrauch brought suit against Speers under § 1983 based on his pursuit of her vehicle. The district court dismissed, concluding Speers was not acting under color of state law within the meaning of § 1983. We agreed:

> It is clear that Speers was acting for the state when he initially towed the car. *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir. 1983). However, the evidence is undisputed that Speers was not performing City towing services when he tried to stop Weinrauch's car and that the police had not requested or authorized his assistance.

*Id.* at 360-61. Similarly, the State Defendants did not request or authorize Garner to sell the truck.

Because Garner's sale of the truck was not state action, the district court properly concluded Dopp had failed to state a claim upon which relief may be granted against Garner. This deficiency could not have been cured by amendment of the complaint.

B. *State Defendants*

Dopp argues the district court erred in granting summary judgment to the State Defendants concerning the (1) 1965 Ford pickup truck, VIN No. 10DK641079, (2) $33,725 cash, (3) $139 cash, (4) 400 Channel Realistic Scanner, (5) miscellaneous bullets, (6) miscellaneous papers, (7) U.S. passport and (8) thirteen photographs. We review *de novo* a grant of summary judgment, applying the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182 (10th Cir. 1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

1. 1965 Ford Pickup Truck, Vin No. 10DK641079

In his complaint, Dopp alleged Defendants Loring and Wyant disposed of his 1965 Ford pickup truck without providing him notice or a pre-deprivation hearing in violation of due process. The district court concluded Loring lawfully released any claim to the truck in May 1996 and Dopp had failed to provide any facts connecting Wyant, or any of the other State Defendants, to the truck's disposal.

Dopp contends the court improperly granted summary judgment to Loring and Wyant based on their release of the truck to him in May 1996. He claims Loring and Wyant never raised this defense and therefore waived it. Dopp also

-10-

argues Loring and Wyant did not effect the release of his truck because the release was conditioned upon him paying all towing and storage fees, contrary to Oklahoma statute.[9]  He alleges Garner refused to release the truck to him without payment of storage fees pursuant to Loring and Wyant's instructions.

There is absolutely no evidence that Loring and Wyant were involved in the truck's sale.  In fact, they had released the truck to Dopp in May 1996, two years prior to its sale.[10]  Although Dopp asserts Loring and Wyant conditioned such release on the payment of storage fees, there is no evidence to support this assertion.  More importantly, the failure to release the truck in May 1996 without

---

[9] *See* OKLA. STAT. tit. 63, § 2-506 (O), (Q) (stating a bona fide owner who recovers property seized under this statute shall not be liable for storage fees unless the owner fails to recover the property within thirty days of receiving written notice from the seizing agency).

[10] Dopp correctly states the State Defendants did not move for summary judgment based on the May 1996 release.  Nevertheless, "[e]ven if a ground is not urged by a party, where the requirements of Rule 56 are met, the court is not barred from any consideration of that ground.  It can grant summary judgment on grounds other than those raised . . . if the facts are fully developed showing entitlement . . . to judgment as a matter of law [and it] is satisfied there is no procedural prejudice to the [other] party."  *Wilder v. Prokop*, 846 F.2d 613, 626 (10th Cir. 1988); *see also Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 620 (10th Cir. 1992) (stating "a district court in appropriate circumstances may grant summary judgment on a ground not formally raised in a summary judgment motion").  In this case, *Martinez* report stated the truck was released to Dopp in May 1996 and the release was attached to the report.  Additionally, in his response to the State Defendants' motion to dismiss (construed as a motion for summary judgment), Dopp argued the release could not be considered because it was conditioned on him paying the truck's towing and storage fees.  Consequently, the Rule 56 requirements were satisfied and Dopp was not prejudiced.

-11-

the payment of storage fees is not the conduct Dopp alleges deprived him of his constitutional rights. Rather, Dopp's claim has always been that the State Defendants wrongfully *disposed* of his truck in violation of his constitutional rights. Indeed, any claim that he was improperly required to pay storage fees to obtain the release of his truck is untimely because Dopp learned in May-June 1996 that requiring payment of storage fees was contrary to Oklahoma law. The court properly granted summary judgment to the State Defendants as to the pickup truck.

2. Cash ($33,725 and $139)

The cash seized from Dopp's residence was placed in the evidence room at the District Attorney's Drug Task Force office. In April 2001, the office was burglarized and several items from the evidence room, including the cash seized from Dopp's residence, were stolen. A full investigation was conducted, resulting in a suspect. However, no charges were filed because there was insufficient admissible evidence to establish probable cause. In his complaint, Dopp argued the State Defendants violated his Fourteenth Amendment due process rights by disposing of this cash without notice or a pre-deprivation hearing. Relying on *Hudson v. Palmer*, the district court concluded the State Defendants were entitled to summary judgment because in cases like this, where the property's disposal was random and unauthorized, due process is violated only if a state's post-deprivation remedies are unavailable, unresponsive or inadequate. 468 U.S. 517

(1984). It concluded the Oklahoma Governmental Tort Claims Act provided a remedy for unlawful deprivation of property and Dopp had failed to allege this remedy was unavailable, unresponsive or inadequate.

Although we agree with the district court that the State Defendants are entitled to summary judgment as to the cash, we do so on a different basis. *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court."). In *Daniels v. Williams*, the Supreme Court held: "[T]he Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." 474 U.S. 327, 328 (1986). Because Dopp alleges he was deprived of his money by the State Defendants' negligence (*i.e.*, not taking adequate measures to safeguard his money), the Fourteenth Amendment does not afford him a remedy.

### 3. Remaining property

According to the *Martinez* report, the scanner, miscellaneous bullets and miscellaneous papers remain in the possession of Defendant Morris at the Ottawa County, Oklahoma, District Court's Office. As to Dopp's U.S. passport and the thirteen photographs, Defendant Morris delivered them to Kathryn Depew, Assistant United States Attorney for the Northern District of Oklahoma, in

-13-

connection with a federal forfeiture hearing in Case No. 96-CV-924, and they remain in her possession. Because the items are still in law enforcement's possession and have not been disposed of, the district court concluded the facts did not support Dopp's wrongful disposal claim and the State Defendants were entitled to judgment as to these items. Dopp does not appear to contest the court's conclusion. Rather, he argues the State Defendants' retention of these items, despite being ordered by the judge presiding over his state criminal case to return them to him, constitutes conversion and the court erred in not addressing this claim.

The record reveals that in Dopp's state court criminal case, the court ordered the State to release these items to Dopp or show cause why they should not be returned to him. In the *Martinez* report, the State Defendants alleged "[n]o one has made any attempt to pick up or otherwise contact the State about picking up [these items.] It would be illegal for the State to deliver [these items] to [Dopp] while he is incarcerated." (R. Vol. I, Doc. 41 at 3.) Therefore, it appears the State Defendants are willing to release the property, just not to Dopp personally due to his incarceration. In any event, while it is true Dopp alleged a state law conversion claim in his complaint, the district court declined supplemental jurisdiction over it, as well as Dopp's other state law claims, because the federal claims had been dismissed. It did not abuse its discretion in doing so. *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213

-14-

(10th Cir. 2006). "The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Dopp has provided no argument as to how the court abused this discretion; he merely asserts federal claims still exist. This argument is foreclosed by our affirmance of the dismissal of his federal claims.

C. *Denial of Motion to Amend Complaint*

The district court denied Dopp's motion to amend based on the procedural posture of the case, in particular, the fact the State Defendants had filed a motion to dismiss based on the claims in the original complaint and resolution of that motion would be delayed if Dopp were allowed to amend his complaint. It also noted any additional factual or legal arguments relevant to Dopp's claims could be asserted in supplemental pleadings responsive to the State Defendants' pending motion for summary judgment rather than in an amended complaint.

Dopp argues the court erred in denying him leave to amend his complaint. He claims he timely attempted to amend his complaint to conform to the newly discovered information contained in the *Martinez* report and to add an allegation that any state post-deprivation remedy would be inadequate for him to challenge the loss of his cash.

We review the denial of leave to amend a complaint for an abuse of discretion. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). Rule

15(a) of the Federal Rules of Civil Procedure provides that leave of court to amend a complaint "shall be freely given when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

The district court did not abuse its discretion. Dopp sought to amend his complaint to conform to the subsequent pleadings and evidentiary materials, particularly, the *Martinez* report, and to assist the defendants and the court in responding to and resolving his claims by being more specific as to dates, incidents, and persons involved. However, the request to amend came almost a year after the *Martinez* report was filed. Moreover, the court provided Dopp an opportunity to clarify any facts in supplemental pleadings. Lastly, we reject Dopp's claim that an amendment would have cured the deficiencies the court later used to dismiss his complaint, specifically, his failure to allege Oklahoma's post-deprivation remedies were unavailable, unresponsive or inadequate to remedy the loss of his cash. Based on our disposition above, *i.e.*, Dopp cannot state a due process claim based on the negligent deprivation of his cash, any amendment would have been futile.

### III. Conclusion

We AFFIRM the district court's dismissal of Dopp's complaint against

Defendant Garner pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Dopp has accumulated two strikes in this matter – one for the dismissal of this appeal and one for the district court's dismissal. *See* 28 U.S.C. § 1915(g).[11] We also AFFIRM the court's grant of summary judgment to the State Defendants. Dopp is reminded to continue making partial payments of his appellate filing fee until the entire balance is paid.

FOR THE COURT:

Terrence L. O'Brien
United States Circuit Judge

---

[11] Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.